**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**RANDY RICHARDS, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 25-861-JWD-SDJ**

**AMAZON.COM SALES, INC., ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 7) filed by Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon"). Plaintiffs Randy Richards ("Richards") and Shuntia Smith, individually and on behalf of her minor children KD and KEYD, (collectively, "Plaintiffs") oppose the motion. (Doc. 12.) Amazon has filed a reply. (Doc. 15.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Amazon's *Motion to Dismiss* is granted in part and denied in part.

## I.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND

At all relevant times, Richards owned a home ("the Property") where all Plaintiffs resided. (Doc. 1-1 at 2–3, ¶¶ 8, 10.)[1] On or about April 25, 2024, Richards purchased an electric bicycle ("the Bicycle") through Amazon's online marketplace. (*Id.* at 3, ¶¶ 11–12.) The Bicycle was sold by PanAme, a third party. (*Id.* ¶ 12.) The product title on Amazon's online marketplace indicated that the Bicycle had a 432-watt-hour battery. (*Id.*) And indeed, the Bicycle came equipped with a rechargeable 432-watt-hour lithium-ion battery. (*Id.* ¶¶ 12–13.) Amazon's "seller guidelines" classify products powered by lithium-ion batteries as "dangerous goods." (*Id.* ¶ 14.) But the

---

[1] At this stage, the Court accepts as true all well-pleaded factual allegations contained in the *Petition* (Doc. 1-1). *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

Bicycle "was marketed and delivered to the Property without any meaningful warnings, instructions, or safety precautions." (*Id.* ¶ 15.)

On or about August 17, 2024, all Plaintiffs were present at the Property. (*Id.* at 4, ¶ 17.) The Bicycle was plugged into an outlet in the living room. (*Id.*) After being moved "a few inches out of the way of the television," the Bicycle "spontaneously combusted," causing multiple fires which, in turn, caused damage to persons and to property. (*Id.* at 4–5, ¶¶ 18–23.) A subsequent investigation "confirmed" that the Bicycle's lithium-ion battery caused the ignition. (*Id.* at 5, ¶ 24.)

In August 2025, Plaintiffs filed suit in the 19th Judicial District Court, Parish of East Baton Rouge, bringing claims under the Louisiana Products Liability Act ("LPLA") and under theories of negligent undertaking and redhibition. (*Id.* at 1, 5–9, ¶¶ 29–55.) In September 2025, Amazon removed the case to this Court on the basis of diversity jurisdiction. (Doc. 1 at 1.) Amazon now moves for dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 7 at 1.)

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, [courts] accept all well-pleaded facts as true and construe the complaint in

the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). Courts "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Whether a plaintiff 'will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits'" than in the context of a motion to dismiss. *Davis v. Amazon.com, Inc.*, No. 25-468, 2026 WL 959194, at *2 (E.D. La. Apr. 9, 2026) (quoting *Smith v. GE Healthcare, Inc.*, No. 19-492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019)).

3

III.    DISCUSSION

A.    Louisiana Products Liability Act

1.    *Parties' Arguments*

Amazon acknowledges that, for purposes of the LPLA, a "seller" is a *de facto* "manufacturer" when: (1) "the seller exercises control over a characteristic of the product's design, construction, or quality," and/or (2) "the seller imports and distributes products of a foreign manufacturer" as that foreign manufacturer's alter ego. (Doc. 7-1 at 2–3 (quoting *Pickard v. Amazon.com, Inc.*, 2023-01596 (La. 6/28/24), 387 So. 3d 515, 519 (citing La. R.S. § 9:2800.53(1)(b), (d)))). Amazon emphasizes, however, that the operator of an online marketplace is not a "seller" of third-party products "when the third-party seller ships the product[s] directly to the buyer." (*Id.* at 3 (citing *Skaggs v. Amazon.com, Inc.*, 2020-1089 (La. App. 1 Cir. 12/15/21), 334 So. 3d 780, *writ denied*, 2022-00068 (La. 3/15/22), 333 So. 3d 1243).) Amazon argues that, here, it cannot qualify as a "seller" because "it did not convey title or possession" of the Bicycle to Richards. (*Id.* at 3–4; *accord* Doc. 15 at 1–2 ("[Plaintiffs] plead no facts demonstrating that Amazon 'convey[ed] title to or possession of' the product, as is necessary to be a 'seller' under the LPLA." (quoting La. R.S. § 9:2800.53(2)))). *But see* Doc. 7-1 at 3 (citing *Pickard*, 387 So. 3d at 523) ("[A]n operator of an online marketplace may qualify as a seller where it takes physical possession of a third-party seller's product to fulfill an order through its own logistics services.").)

Plaintiffs argue that whether a seller is a foreign manufacturer's alter ego depends on "several factors," including: (1) "whether the seller assumes or administers product warranty obligations of the alien manufacturer," and/or (2) "whether the seller prepares or modifies the product for distribution." (Doc. 12 at 3 (quoting La. R.S. § 9:2800.53(1)(d)).) Plaintiffs argue that they have "sufficiently ple[d] that [Amazon] accepted the [Bicycle] from PanAme for distribution

4

from [Amazon's] warehouse and that Amazon assumed and administered [PanAme's] product warranty obligations." (*Id.* at 4.)

### 2. Applicable Law & Analysis

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.52. Under the LPLA, a "manufacturer" is "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." *Id.* § 9:2800.53(1).[2] Ordinarily, a seller is not a manufacturer. *See id.* § 9:2800.53(2) ("'Seller' means a person or entity who is *not* a manufacturer . . . ." (emphasis added)). But in certain instances, such as where the manufacturer is foreign, it may be appropriate to treat a seller as a manufacturer. *See, e.g.*, John N. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 575–76 (1989) ("[A] seller may be the only defendant available . . . if the alien manufacturer, because of his foreign status, is not subject to service of process or is immune from enforcement of a judgment. In those circumstances, the seller-importer or seller-distributor who is the alien manufacturer's alter ego should bear the loss . . . ."). Thus, a seller can qualify as a manufacturer "if the seller is in the business of importing or distributing [the foreign

---

[2] La. R.S. § 9:2800.53(1) provides in full:

"Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
  (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
  (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
  (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
  (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

manufacturer's] product for resale" and if the seller is the foreign manufacturer's alter ego. La. R.S. § 9:2800.53(1)(d); *accord Pickard*, 387 So. 3d at 519.

The Louisiana Supreme Court has recently clarified that, for purposes of the LPLA, the operator of an online marketplace qualifies as a "seller" of third-party products when it (1) "had physical custody of the product in its distribution warehouse" and (2) "controlled the process of the transaction and delivery through its product fulfillment program." *Pickard*, 387 So. 3d at 520–23. The upshot is that the operator of an online marketplace can also qualify as a "manufacturer" for purposes of the LPLA, assuming satisfaction of the aforementioned criteria. *See, e.g.*, *id.* at 519; *Pickard v. Amazon.com, Inc.*, No. 20-1448, 2024 WL 4884428, at *5–10 (W.D. La. Nov. 25, 2024); *Davis*, 2026 WL 959194, at *3; *cf. Skaggs*, 334 So. 3d at 787, 789 (rejecting the argument that Amazon was a "seller" under the LPLA where Amazon "did not sell the battery, never possessed or touched the battery . . . , and never took title to the battery").

Here, Plaintiffs allege that Richards purchased the Bicycle from PanAme "through Amazon's online marketplace." (Doc. 1-1 at 3, ¶ 12.) According to the *Petition*, "Amazon is in the business of importing or distributing the [Bicycle] and items similar to the [Bicycle] for resale." (*Id.* at 6, ¶ 31.) Further, "Amazon assume[d] and/or administer[ed] [PanAme's] product warranty obligations *and prepared the [Bicycle] for distribution from [Amazon's] warehouse*." (*Id.* ¶ 33 (emphasis added); *see also id.* at 7, ¶ 36 ("[The Bicycle] contained a manufacturing defect, which existed at the time [it] left PanAme *and arrived at Amazon's warehouse*." (emphasis added)).)

Amazon resists the "seller" label by asserting that it did not convey title to or possession of the Bicycle to Richards. At this stage, however, the Court accepts as true all well-pleaded factual allegations contained in the *Petition* and construes the *Petition* in the light most favorable to Plaintiffs. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210. Contrary to Amazon's

6

assertion, Plaintiffs have adequately alleged that Amazon is in the business of importing the Bicycle and that Amazon had physical custody of the Bicycle in its distribution warehouse. (*See* Doc. 1-1 at 6–7, ¶¶ 31, 33, 36); *see also Pickard*, 387 So. 3d at 521, 523 (defining "possession" as "physical custody and control of the product, without regard to ownership"). Amazon's narrow argument—that it is not a "seller" because it never possessed the Bicycle—fails at this stage.[3]

### B.    Negligent Undertaking

#### 1.    *Parties' Arguments*

Amazon contends that "Plaintiffs' negligent undertaking theory fails because (1) Amazon did not assume any duty owed by third-party seller PanAme, and (2) Plaintiffs have not alleged and cannot plausibly allege that Amazon increased the risk of harm or that Plaintiffs relied on any undertaking by Amazon." (Doc. 7-1 at 4.) It emphasizes that "negligent undertaking requires an affirmative or positive undertaking" and that "[g]eneral concern about safety, internal monitoring, inspections or recommendations do not, on their own, constitute an assumption of duty." (*Id.* at 5 (citing *Pickard*, 387 So. 3d at 525); *accord* Doc. 15 at 2 (citing *Skaggs*, 334 So. 3d at 790–91).)

Plaintiffs respond that Amazon "expressly undertook the duty to regulate product safety on its marketplace by promulgating and enforcing detailed product-eligibility rules," including policies which "specifically state that lithium-ion batteries exceeding [300]-watt-hours are not suitable for sale in the United States." (Doc. 12 at 6; *see* Doc. 1-1 at 7, ¶ 38.) Nevertheless, Plaintiffs say, Amazon allowed PanAme to sell the Bicycle to Richards, without so much as warning that the Bicycle's 432-watt-hour lithium-ion battery was unsafe. (Doc. 12 at 6.)

---

[3] The Court observes that Amazon relies heavily on *Pickard* and *Skaggs*. (*See* Doc. 7-1 at 3.) But the instant case comes before the Court on a Rule 12(b)(6) motion to dismiss, whereas *Pickard* and *Skaggs* concerned motions for summary judgment. The factual assertions which Amazon makes in order to complete its analogy to *Pickard* and *Skaggs* are not within the scope of the instant motion. Rather, the fact-based issues at which Amazon gestures are more appropriately addressed at the summary judgment stage. *See Davis*, 2026 WL 959194, at *2 (citing *Smith*, 2019 WL 4565246, at *7).

### 2.    *Applicable Law & Analysis*

"A claim of 'negligent undertaking' is based on the assumption of a duty." *Pickard*, 387 So. 3d at 524 (citing *Bujol v. Entergy Servs., Inc.*, 03-0492 (La. 5/25/04), 922 So. 2d 1113, 1128–29, *adhered to on reh'g* (11/19/06)). "For assumption of a duty, [Louisiana] ha[s] adopted" the Restatement (Second) of Torts § 324A. *Id.* (citing *Hebert v. Rapides Par. Police Jury*, 06-2001 (La. 4/11/07), 974 So. 2d 635, 643–44; *Bujol*, 922 So. 2d at 1128). That section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Id.* (quoting Restatement (Second) of Torts § 324A (1965)).

The Louisiana Supreme Court has distilled the above into a two-step inquiry: First, did the defendant assume a duty to render services which the defendant should have recognized as necessary for the protection of a third person? *Id.* at 524–25 (citing *Bujol*, 922 So. 2d at 1129). "An affirmative or positive undertaking is required, and courts should consider the scope of the defendant's involvement, the extent of defendant's authority, and defendant's underlying intent." *Id.* (citing *Bujol*, 922 So. 2d at 1131). "Mere concern or minimal contact about safety matters are not sufficient to constitute an assumption of a duty." *Id.* at 525 (citing *Bujol*, 922 So. 2d at 1131; *Hebert*, 974 So. 2d at 644). "Likewise, inspections and safety recommendations, which are not mandatory or within defendant's authority to remediate, do not create such a duty." *Id.* (citing *Bujol*, 922 So. 2d at 1133–34; *Hebert*, 974 So. 2d at 644).

Second, can the plaintiff prove that "(a) defendant's failure to exercise reasonable care increased the risk of harm to plaintiff, (b) defendant undertook to perform a duty owed by another

to plaintiff, or (c) plaintiff's harm was suffered because plaintiff or the person who originally had the duty relied on defendant to perform the duty"? *Id.* (citing *Bujol*, 922 So. 2d at 1129). The final option—the "'reliance' alternative"—"requires the harm be suffered because of reliance by the plaintiff . . . on defendant's undertaking to perform the duty." *Id.* (citing *Bujol*, 922 So. 2d at 1136).

Here, Plaintiffs allege that "Amazon operates an online marketplace" where third parties can sell products, "subject to Amazon's policies and oversight." (Doc. 1-1 at 3, ¶ 11.) "Amazon['s] seller guidelines contain separate requirements for products powered by lithium batteries as they carry a 'dangerous goods' classification." (*Id.* ¶ 14.) Any product with a lithium-ion battery exceeding 300 watt-hours "is rejected for use in the United States." (*Id.* at 7, ¶ 38.) And Amazon "promise[s] to remove [unsafe] products from [its] website," assign warnings, "monitor safety documentation for products," and "directly notify consumers if there is a safety issue with a product." (*Id.* at 4, ¶ 16; *see also id.* at 9, ¶ 47 ("Amazon requests documentation from any seller who lists a product containing a lithium-ion battery, and may remove a product, immediately suspend or terminate the seller's privileges, and notify purchasers of . . . safety concerns.").)

According to the *Petition*, Amazon "voluntarily assumed a duty owed by . . . PanAme to identify, remove, and warn customers about unsafe products." (*Id.* at 8, ¶ 47.) Despite that affirmative undertaking, Amazon "did not adequately vet" PanAme, "did not monitor safety documentation" for the Bicycle, and did not notify Plaintiffs "that there was a safety issue" with the Bicycle. (*Id.* at 5, ¶ 27; *see also id.* at 7, ¶ 40 ("No adequate warning about the combustion capabilities of these types of batteries was provided to [Plaintiffs] . . . .").) Plaintiffs further allege that they "relied on Amazon's assumption of th[e] duty to identify, remove, or warn of unsafe products" and that "Amazon did not perform" its duty with reasonable care. (*Id.* at 9, ¶¶ 48–49.) As a consequence, Plaintiffs "suffered serious damages." (*Id.* ¶ 50.)

9

Another district court has recently considered a similar negligent undertaking claim. *See Davis*, 2026 WL 959194, at *3–5. In *Davis v. Amazon.com, Inc.*, the court observed that the plaintiff waited until the opposition to Amazon's Rule 12(b)(6) motion to dismiss to argue that Amazon: "a. Operates and controls an online marketplace platform; b. Implements policies for screening and monitoring products; c. Maintains procedures for removing unsafe or recalled products; d. Facilitates distribution of products through its platform; and e. Failed to remove or prevent distribution of a product later subject to a recall." *Id.* at *4; *see also id.* ("Importantly, these . . . are not allegations found in Plaintiff's Second Supplemental and Amending Complaint."). The complaint likewise failed to allege any of the three alternatives which comprise the second step of the two-step inquiry. *Id.* at *5 (citing *Pickard*, 387 So. 3d at 525; *Bujol*, 922 So. 2d at 1129).

Unlike the complaint in *Davis*, the *Petition* adequately alleges that Amazon voluntarily and affirmatively undertook a duty—including on behalf of PanAme—to monitor product safety, to assign warnings, and to remove unsafe products from its online marketplace. According to the *Petition*, Amazon has specific policies for products containing lithium-ion batteries; in particular, Amazon deems lithium-ion batteries exceeding 300 watt-hours to be unsafe for use in the United States. As the operator of the online marketplace, Amazon has the ability to assign warnings and/or to remove unsafe products. And Amazon requests documentation from third-party sellers who list products containing lithium-ion batteries and can remove such products, suspend or terminate sellers, and notify purchasers of concerns over the safety of such products. Here, however, Amazon allegedly allowed PanAme to sell the Bicycle to Richards, without so much as warning that the 432-watt-hour lithium-ion battery rendered the Bicycle unsafe for use in the United States. Plaintiffs aver that they relied on Amazon's affirmatively undertaking the above product-safety-related duty and were injured because of Amazon's negligent performance of same.

10

Amazon contends that Plaintiffs' negligent undertaking claim fails because Amazon did not, in fact, assume any duty owed by PanAme to Plaintiffs. Worth repeating, Amazon chose to lodge a Rule 12(b)(6) motion to dismiss, and that choice has consequences. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210. Plaintiffs have adequately alleged that Amazon affirmatively undertook a duty to Plaintiffs, that Plaintiffs relied on Amazon, and that Plaintiffs were injured because of Amazon's negligent performance of its duty. Given the posture of this case, Amazon's reliance on *Skaggs* is once again misplaced. *See Davis*, 2026 WL 959194, at *2 (explaining that consideration of fact-intensive issues "is more appropriate in the context of a motion for summary judgment" (quoting *Smith*, 2019 WL 4565246, at *7)).

### C.    Redhibition

#### 1.    *Parties' Arguments*

Amazon argues that it "cannot be liable under a redhibition theory because it was not the 'seller'" of the Bicycle and "never possessed the [B]icycle between the transfer from PanAme to Plaintiffs." (Doc. 7-1 at 5; *see also id.* at 6–7 ("[A] redhibition claim lies only against a seller, which requires a transfer of ownership." (citations omitted)); Doc. 15 at 3 ("Amazon was not the seller of the [Bicycle].").) Amazon adds that it was never given an opportunity to repair the defective battery "and did not act in bad faith with prior knowledge of the alleged defect." (Doc. 7-1 at 5; *see also id.* at 7 (citing La. Civ. Code art. 2545).)

Plaintiffs respond that the *Petition* adequately alleges the elements of a redhibition claim, including that the Bicycle contained a redhibitory defect, that the defect existed at the time of sale, that the defect was not apparent or discoverable by a reasonably prudent buyer, and that the defect caused damages like economic loss and loss of use of the Bicycle. (*See* Doc. 12 at 7–8.)

11

### 2.    *Applicable Law & Analysis*

"The seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id.* In order to bring a redhibition claim, a plaintiff must plausibly allege that:

> (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect.

*Johnson v. CHL Enters.*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000) (citations omitted). A plaintiff need not allege the third element if he has plausibly alleged that the seller "was in bad-faith because it had knowledge of the defect or the product has been destroyed." *Davis*, 2026 WL 959194, at *7 (citing La. Civ. Code art. 2522). "A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing." La. Civ. Code art. 2545.

Here, Plaintiffs allege that Amazon is a manufacturer and is therefore "conclusively presumed to have known" that the Bicycle was defective. (Doc. 1-1 at 9, ¶ 54.) But Plaintiffs' basis for this assertion is that Amazon qualifies as a manufacturer *under the LPLA*. (*Id.* (citing La. R.S. § 9:2800.53(1)(d)).) Worth repeating, Amazon qualifies as a manufacturer under the LPLA by virtue of falling within a narrow "seller" carveout which is intended to protect consumers in the event that the actual manufacturer is unavailable because it is foreign. *See* La. R.S. § 9:2800.53(1)(d); *Pickard*, 387 So. 3d at 523; *see also* Kennedy, *A Primer on the Louisiana Products Liability Act*, *supra*, at 575–76 ("[A] seller may be the only defendant available to the plaintiff if the alien manufacturer, because of his foreign status, is not subject to service of process or is immune from enforcement of a judgment.").

12

A redhibition claim can only exist between a buyer and a seller. *Franks v. Royal Oldsmobile Co.*, 605 So. 2d 633, 635 (La. App. 5 Cir. 1992) (referencing La. Civ. Code arts. 2520–2540); *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54, 56 (E.D. La. 1997) (citing, *inter alia*, *Newbaker v. Lanier*, 497 So. 2d 355, 359 (La. App. 3 Cir. 1986)). To qualify as a seller for purposes of redhibition, "a transfer of ownership must take place." *Ahrens*, 955 F. Supp. at 56 (citing, *inter alia*, *Duplechin v. Adams*, 95-0480 (La. App. 1 Cir. 11/9/95), 665 So. 2d 80, 84); *see also* La. Civ. Code art. 2439 ("Sale is a contract whereby a person transfers ownership of a thing to another for a price in money."); *id.* art. 2452 ("The sale of a thing belonging to another does not convey ownership."). "Louisiana appellate courts have consistently required an ownership interest on the part of a seller in a redhibitory action." *Ahrens*, 955 F. Supp. at 57; *accord Brown v. Johnson & Johnson, Inc.*, No. 15-2308, 2015 WL 6128706, at *2 (E.D. La. Oct. 16, 2015); *Sentry Supply Inc. v. NLMK N. Am. Plate LLC*, No. 16-1393, 2019 WL 1388793, at *3 (W.D. La. Mar. 27, 2019).

Here, the *Petition* does not allege that Amazon is a "seller" for purposes of redhibition. On the contrary, the *Petition* alleges: "The order details indicate[] that the [Bicycle] was 'Sold by: PanAme,' a third-party seller . . . ." (Doc. 1-1 at 3, ¶ 12.) The mere allegation that Amazon possessed the Bicycle (i.e., for the sake of distribution from its warehouse) is insufficient. (*See id.* at 6–7, ¶¶ 33, 36; *see also id.* at 9, ¶ 53 ("The defect was present at the time the [Bicycle] was delivered to the Property . . . .").) Amazon needs to have had an ownership interest. *See Daniels v. Touro Infirmary*, No. 11-1586, 2011 WL 6140869, at *2 (E.D. La. Dec. 9, 2011) ("Plaintiffs have made no allegations and have submitted no evidence that [the distributor] possessed an ownership interest in the [product]. Accordingly, there is no possibility that [P]laintiffs can maintain a redhibitory action against [the distributor]." (quoting *Ahrens*, 955 F. Supp. at 58)).

13

Again, Plaintiffs rely upon Amazon's qualifying as a manufacturer under the LPLA in order to claim that Amazon knew that the Bicycle was defective. (*See* Doc. 1-1 at 9, ¶ 54.) But Plaintiffs supply no basis for grafting the LPLA's definition of seller—let alone the carveout—onto a redhibition claim. *See also Pickard*, 387 So. 3d at 523 ("We express no opinion whether the operator of an online marketplace is a seller in any other context."). Indeed, other district courts have rejected this exact argument. *See, e.g.*, *Ahrens*, 955 F. Supp. at 57–58; *Daniels*, 2011 WL 6140869, at *2 & n.4. As the district court wrote in *Ahrens v. TPLC, Inc.*:

> Plaintiffs' argument that the Court should use the LPLA's definition of "seller" in this redhibitory action is unpersuasive. Plaintiffs have provided no authority in support of why the Court should use the definition of seller contained in the LPLA, upon which none of plaintiffs' claims against Ball rely, instead of the established jurisprudential definition of seller under redhibition, the only theory upon which plaintiffs' claim against Ball relies. Accordingly, the Court declines to adopt this novel definition of seller for the purposes of a redhibitory action.

*Id.* at 57–58.[4] Because Plaintiffs have not plausibly alleged that Amazon is a "seller" for purposes of Plaintiffs' redhibition claim, the Court will dismiss the claim. However, the Court will also allow Plaintiffs one opportunity to amend.

## IV.   LEAVE TO AMEND

Although not requested, the Court will allow Plaintiffs leave to amend their redhibition claim. "Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). A court "ordinarily should not dismiss" a claim "except after affording every opportunity to the plaintiff[s] to state a claim

---

[4] The Court acknowledges that, here, Plaintiffs have stated a valid claim for relief under the LPLA. Nevertheless, the logic of *Ahrens* applies: Plaintiffs give the Court no reason to use the LPLA's definitions in the redhibition context.

upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (quotation

omitted). The Fifth Circuit has explained:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

And a leading treatise has elaborated:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not with prejudice—meaning, not immediately final or on the merits—because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if there is no basis for concluding that the plaintiff can state a claim and thus permitting an amendment would be futile. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice would be to allow at least one amendment regardless of how unpromising the initial pleading appears because it usually is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief. Such a practice would be in line with the more forgiving treatment courts typically give to initial attempts to amend.

5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. 2026) (citations omitted).

Here, "the Court will act in accordance with the [above] 'wise judicial practice.'" *JMCB,*

*LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 641–42 (M.D. La. 2018) (deGravelles, J.); *see*

*also Fetty v. La. State Bd. of Priv. Sec. Exam'rs*, 611 F. Supp. 3d 230, 250 (M.D. La. 2020)

(deGravelles, J.) (citing *JMCB*, 336 F. Supp. 3d at 641–42) ("[B]ecause Plaintiffs did not amend

their complaint in response to a ruling by this Court, and because of the above 'wise judicial

practice,' the Court will grant Plaintiffs one final opportunity to amend their complaint to state

15

viable claims against the [defendants].”); *Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 641–42) (reaching same result). Failure to cure any deficiencies within twenty-eight (28) days will result in dismissal of Plaintiffs’ redhibition claim with prejudice. Additionally, the Court reminds Plaintiffs of Federal Rule of Civil Procedure 11. If Plaintiffs do not believe that they can amend consistent with Rule 11, then it is incumbent upon Plaintiffs to admit same and avoid wasting judicial resources.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 7) filed by Amazon.com, Inc. and Amazon.com Services LLC (collectively, “Amazon”) is **GRANTED IN PART** and **DENIED IN PART**. Amazon’s motion is **GRANTED** insofar as Plaintiffs’ redhibition claim is **DISMISSED WITHOUT PREJUDICE**. In all other respects, Amazon’s motion is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-eight (28) days from the date of this *Ruling and Order* within which to amend their redhibition claim to cure any deficiencies if same can, in good faith, be cured. If Plaintiffs fail to do so, then their redhibition claim will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>July 23, 2026</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16